UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DUNHILL ASSET SERVICES III, LLC, successor to Bank of America, N.A., successor to LaSalle Bank National Association, | ) ) ) ) | 09 C 5634 |
| Plaintiff, | ) ) | Judge Feinerman |
| vs. | ) ) | |
| ANDREW TINBERG, CYNTHIA E. GRAZIAN, THOMAS W. DeROBERTIS, ROBERT R. ROMERO, DANIEL O. WALSH, and JAMES T. ASHACK, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dunhill Asset Services III, LLC, alleges in this lawsuit that Defendants Andrew Tinberg, Cynthia E. Grazian, Thomas W. DeRobertis, Robert R. Romero, Daniel O. Walsh, and James T. Ashack have failed to repay loans made under debt instruments that Dunhill's predecessor, Bank of America, N.A., purchased from its predecessor, LaSalle Bank National Association. The court's prior substantive rulings are as follows. The counterclaims of Ashack, DeRobertis, Tinberg, and Walsh have been dismissed with prejudice. Docs. 64, 65. Final judgment has been granted against Romero. Docs. 60, 63, 99, 100. Although the claims against Grazian were stayed due to her bankruptcy, Docs. 44, 63, Dunhill recently informed the court that it "has no ability or intention of pursuing claims against … Grazian in the instant case." Doc. 143 at 2. The court denied Dunhill's motion for judgment on the pleadings against Ashack, DeRobertis, Tinberg, and Walsh. Doc. 106. Now before the court is Dunhill's motion for summary judgment on liability as to those four defendants. The motion is granted.

**Background**

The following facts are stated as favorably to Ashack, DeRobertis, Tinberg, and Walsh (collectively, "Defendants") as the record and Local Rule 56.1 allow. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). That said, Defendants' Local Rule 56.1(b)(3)(B) response admits many of Dunhill's facts, and although it denies Dunhill's other facts, it does not support the denials with citations to any affidavit or record material. Under Local Rule 56.1(b)(3)(B), a movant's asserted fact is deemed admitted despite a non-movant's denial if evidence cited by the movant's Local Rule 56.1(a)(3) statement supports the fact and the non-movant's Local Rule 56.1(b)(3)(B) response cites no evidence to support its denial. *See* N.D. Ill. L.R. 56.1(b)(3)(B) (requiring the non-movant to file "(3) a concise response to the movant's statement that shall contain: … (B) a response to each numbered paragraph in the moving party's statement, *including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon*") (emphasis added); *Leibforth v. Belvidere Nat'l Bank*, 337 F.3d 931, 934 n.1 (7th Cir. 2003); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003); *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 & n.4 (7th Cir. 2000). Accordingly, the facts set forth in Dunhill's Local Rule 56.1(a)(3) statement are deemed admitted.

On July 15, 2006, Defendants took out a substantial loans from LaSalle, and each signed a promissory note with LaSalle (collectively, "2006 Notes"). Docs. 114-2, 114-10, 114-18, 114-26; Doc. 122 at ¶¶ 14, 31, 47, 63. The loan proceeds were disbursed to an account owned by ISB Financial Corporation. Doc. 122 at ¶¶ 14, 31, 47, 63. In exchange, each Defendant received ISB stock, which he pledged to LaSalle in a Commercial Pledge Agreement (collectively, "2006 Pledge Agreements"). Docs. 114-3, 114-11, 114-19, 114-27; Doc. 122 at ¶¶ 16, 33, 49, 65. The

2006 Pledge Agreements provide that they "shall be binding upon and inure to the benefit of the parties, their successors and assigns." Doc. 114-3 at 4. (Here and for the remainder of this opinion, only Tinberg's instruments are quoted; the instruments signed by the other three defendants are identical to Tinberg's, with the immaterial exception of the borrower's identity and the borrowed amount.)

On July 31, 2007, Defendants and LaSalle signed a promissory notes (collectively, "2007 Notes") that replaced the 2006 Notes and extended the loans' maturity date to July 31, 2008. Docs. 114-6, 114-14, 114-22, 114-30; Doc. 122 at ¶¶ 17-18, 34-35, 50-51, 66-67. The 2007 Notes provide, in relevant part:

> REPLACEMENT NOTE. This Note is a restatement, replacement and substitute for, but not a repayment of, that certain … Promissory Note dated July 15, 2006 executed by Borrower and payable to the order of Lender (the "Prior Note"). The indebtedness evidenced by the Prior Note is continuing indebtedness evidenced by this Promissory Note, and nothing contained herein shall be deemed to constitute a repayment, settlement or novation of the Prior Note.
>
> * * *
>
> SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

Doc. 114-6 at 2.

Around July 31, 2008, Defendants and Bank of America executed instruments entitled Amendment to Promissory Note and Reaffirmation of Pledge Agreement (collectively, "Amendments"). Docs. 114-8, 114-16, 114-24, 114-32; Doc. 122 at ¶¶ 19-20, 36-37, 52-53, 68-69. The first paragraph of the Amendments reads: "The Amendment to Promissory Note and Reaffirmation of Pledge Amendment (this '<u>Amendment</u>') is made as of the 31st day of July,

-3-

2008, by and between Andrew E. Tinberg (the 'Borrower') and Bank of America, N.A., as successor to LaSalle Bank National Association, a national banking association ('Bank')." Doc. 114-8 at 1. The Amendments extended the loans' maturity date to January 15, 2009. *Ibid*. The Amendments also state, in relevant part:

> 5. Representations and Warranties. To induce Bank to enter into this Amendment, the Borrower represents and warrants to Bank that this Amendment has been duly executed and delivered by the Borrower, and that the Promissory Note (as amended by this Amendment) or Pledge Agreement and each other agreement (collectively, the "Loan Documents") constitutes the legal, valid, and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in law or equity). Without in any manner limiting the generality of the release set forth in Section 7 hereof, the Borrower hereby represents, warrants, covenants and agrees that there exists no offsets, counterclaims or defenses to payment or performance of the obligations set forth in its Loan Documents and, in consideration hereof, expressly waives any and all such offsets, counterclaims and defenses arising out of any alleged acts, transactions or omissions on the part of Bank arising (or otherwise relating to the period) on or prior to the Amendment Effective Date.…

*Id*. at 2.

On September 21, 2010, Dunhill entered into a Loan Sale Agreement to purchase the debt instruments from Bank of America. Doc. 114-1; Doc. 122 at ¶ 1. Defendants have not paid the amounts due. Doc. 122 at ¶¶ 22-26, 38-42, 54-58, 70-74.

Before proceeding, it bears mention that Defendants' summary judgment brief cites to the raw record, or to nothing at all, in making several factual assertions. Doc. 123 at 2-3 (arguing that Bank of America did not acquire LaSalle), 3 (arguing that LaSalle breached its obligations by making advances without Defendants' authorization), 7-8 (same), 12-13 (arguing that new evidence supports Defendants' position that Defendants engaged in an unlawful tying

-4-

arrangement). None of these assertions find support in Defendants' Local Rule 56.1(b)(3)(B) response, and Defendants did not file a Local Rule 56.1(b)(3)(C) statement of additional facts. "Under settled law, facts asserted in a brief but not presented in a Local Rule 56.1 statement are disregarded in resolving a summary judgment motion." *Perez v. Town of Cicero*, 2011 WL 4626034, at *2 (N.D. Ill. Sept. 30, 2011); *see also Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (holding that the predecessor to Local Rule 56.1(b)(3) "provides the only acceptable means of … presenting additional facts to the district court"); *Garner v. Lakeside Cmty. Comm.*, 2011 WL 2415754, at *1 n.1 (N.D. Ill. June 13, 2011) ("the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3) statement of additional facts"); *Curtis v. Wilks*, 704 F. Supp. 2d 771, 789 (N.D. Ill. 2010) ("Any facts plaintiffs assert in their response brief that were not included in their LR 56.1 submissions will not be considered."); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 966 (N.D. Ill. 2007) ("facts are properly presented through the framework of the Rule 56.1 statements, and not through citation in the briefs to raw record material"). Accordingly, the above-referenced assertions in Defendants' brief will be disregarded.

This outcome reflects an appropriate application of Local Rule 56.1. That rule provides the mechanism for determining whether the summary judgment record presents genuine factual disputes. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Whether they seek or oppose summary judgment, parties have a right to expect that Local Rule 56.1 will be enforced and that facts not properly presented under the rule will be disregarded. *See Renta v. Cnty. of Cook*, 2011 WL 249501, at *1-2 (N.D. Ill. Jan. 26, 2011). Given this, the court should enforce Local Rule 56.1, *see Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) ("[w]e have

repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions"); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) ("district courts are entitled to expect strict compliance with Local Rule 56.1"), regardless of whether it is explicitly asked to do so by a party, *see Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir. 1994) ("there is nothing improper in the court enforcing [a local summary judgment] rule strictly, even if the parties themselves have not raised the matter"); *Speed Boats of Tex., LP v. Bank of Am., N.A.*, 2011 WL 759955, at *1 n.1 (N.D. Ill. Feb. 25, 2011) ("a party's choice not to raise [an opposing party's Local Rule 56.1 violation] does not preclude a district court from holding a party to account for such violations *sua sponte*").

This outcome, moreover, is consistent with *Sojka v. Bovis Lend Lease, Inc.*, __ F.3d __, 2012 WL 2765031 (7th Cir. July 10, 2012). *Sojka* holds that where a non-movant properly includes facts sufficient to preclude summary judgment in its Local Rule 56.1(b)(3)(B) response or Local Rule 56.1(b)(3)(C) statement, the district court must consider those facts and deny summary judgment even if the non-movant does not also recite or refer to those facts in its summary judgment brief. *Id*. at *4–5. (*Sojka* recognizes that it is far better practice for the non-movant to reference the facts in its brief and explain why they require denial of summary judgment, even if that is not strictly required by Local Rule 56.1. *Id*. at *5.) Here, Defendants' problem is that their Local Rule 56.1(b)(3)(B) response does not reference, let alone present evidence to support, any of the above-referenced assertions in their brief. As explained above, facts not properly presented through a Local Rule 56.1(b)(3) response or statement are disregarded on summary judgment. That requirement is not abrogated by *Sojka*.

**Discussion**

The parties agree that Illinois law governs the substantive aspects of this case. Defendants do not dispute that they signed the 2006 Notes, the 2007 Notes, and the Amendments. Nor do they dispute that they have failed to repay the amounts due on the loans. Absent some justification or defense, these concessions would warrant judgment in Dunhill's favor as to liability. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742-43 (7th Cir. 2010) ("If the terms of the contract are unambiguous, the court must enforce the contract as written."). Defendants offer several arguments in an effort to forestall this result. Each argument fails to persuade.

**I.     Personal Jurisdiction**

In their Local Rule 56.1(b)(3)(B) response, Defendants deny that the court has personal jurisdiction over them; the reason, they say, is that Dunhill is not licensed to conduct business in Illinois. Doc. 122 at ¶ 9. The court will consider this argument even though it is presented only in Defendants' Local Rule 56.1(b)(3)(B) response and not in their brief. On the merits, the argument is frivolous. Personal jurisdiction is assessed with reference to the defendant, not the plaintiff. *See Kromrey v. U.S. Dep't of Justice*, 423 F. App'x 624, 626 (7th Cir. 2011). Because Defendants admit that they reside in Illinois, Doc. 38 at ¶¶ 2-4, 7, it is axiomatic that they are subject to personal jurisdiction in Illinois. In any event, Defendants waived any objection to personal jurisdiction by answering the complaint (Doc. 12) without filing a Rule 12(b)(2) motion. *See* Fed. R. Civ. P. 12(h)(1).

**II.    Dunhill's Ability to Enforce the Operative Loan Instruments**

Defendants contend that Dunhill has not established that it owns the operative loan instruments because it has not proven that Dunhill's predecessor, Bank of America, acquired the

instruments from LaSalle. Doc. 123 at 2-3. That contention fails. In so holding, the court does *not* rely upon the unrebutted submission in Dunhill's Local Rule 56.1(a)(3) statement that Bank of America "was the successor in interest to" LaSalle. Doc. 113 at ¶ 2. Whether Bank of America was LaSalle's successor-in-interest is a legal conclusion, not a factual statement. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010). As the movant, Dunhill cannot score legal points in its Local Rule 56.1(a)(3) statement. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008).

Dunhill does establish its point, however, in its briefs, which leave no doubt that Bank of America acquired the loan instruments from LaSalle. The Amendments, which Defendants themselves signed, explicitly identify Bank of America as "successor to LaSalle Bank National Association"—both in their opening paragraphs and their signature pages. Doc. 114-8 at 1, 5. The Amendments also state that Defendants "entered into [the 2007 Notes]," that Defendants and Bank of America "desire to amend the [2007 Notes] in certain respects," and that each Defendant "desires to reaffirm its pledge and obligations under the [2006] Pledge Agreement." *Id*. at 1. The 2006 Pledge Agreements and 2007 Notes, in turn, say that they inure to the benefit of LaSalle's "successors and assigns." Doc. 114-3 at 4; Doc. 114-6 at 2.

Given these provisions, Defendants cannot plausibly maintain that Bank of America did not acquire the loan instruments and was not LaSalle's successor. If Bank of America was not LaSalle's successor-in-interest, why would Defendants sign an instrument saying—in its opening paragraph and again on its signature page—that Bank of America was LaSalle's successor? And if Bank of America did not acquire LaSalle's rights under the 2007 Notes and 2006 Pledge Agreements, why would Defendants contract with Bank of America to amend the 2007 Notes and to reaffirm the 2006 Pledge Agreements? The answer is that Defendants would

not have entered into the Amendments had it not been perfectly plain to all that Bank of America was LaSalle's successor—for the Amendments, which extended the loans' maturity date, would have been meaningless and ineffective had Bank of America not been LaSalle's successor and had Bank of America not acquired LaSalle's rights under the 2007 Notes and 2006 Pledge Agreements. It therefore is beyond dispute that, for purposes of the loan instruments in this case, Bank of America was LaSalle's successor-in-interest. *See Wasserman v. Autohaus on Edens, Inc.*, 559 N.E.2d 911, 918 (Ill. App. 1990) ("A party that accepts the benefits of an agreement is estopped from denying the existence of that agreement or from performing its obligations thereunder."); *Cashman v. Shinn*, 441 N.E.2d 940, 943 (Ill. App. 1982) ("The letter made perfectly clear that the checks were being sent pursuant to the July 31, 1978, resignation agreement the terms of which are not in dispute. … Since plaintiff accepted those benefits sent to him under the resignation agreement, he was estopped to deny its validity."). And because Defendants do not dispute that Dunhill was Bank of America's successor-in-interest, Dunhill indisputably is the successor-in-interest (via Bank of America) to LaSalle.

Defendants alternatively contend that even if Dunhill is LaSalle's successor-in-interest for the *2007* Notes, Dunhill did not acquire the *2006* Notes from Bank of America, and that because the 2006 Notes are the operative instruments, Dunhill has no claim against Defendants. Doc. 123 at 3-5, 7. The premise underlying this contention—that the 2006 Notes are the operative instruments—is incorrect. By their plain terms, the 2007 Notes were a "restatement, replacement and substitute for" the 2006 Notes. Doc. 114-6 at 2. Defendants offer no basis to interpret the 2007 Notes contrary to their plain meaning. *See In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("Unless the agreement unequivocally specifies special meanings, the court must interpret the words of the contract with their common and generally accepted

meanings."). It follows that the 2007 Notes are the operative instruments. *See Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 757 (7th Cir. 2012) (citing cases); *Donovan v. Cnty. of Lake*, 951 N.E.2d 1256, 1267 (Ill. App. 2011); *Schwinder v. Austin Bank of Chi.*, 809 N.E.2d 180, 189 (Ill. App. 2004) ("when a contract is modified or amended by a subsequent agreement, any lawsuit to enforce the argument must be brought on the modified agreement and not on the original agreement"). And having acquired the 2007 Notes, Dunhill may enforce them against Defendants.

### III. Affirmative Defenses

Defendants argue that: (1) the 2007 Notes are void for lack of consideration; (2) LaSalle materially breached the 2006 Notes; and (3) the 2006 Notes are invalid because they created illegal tying arrangements in violation of 12 U.S.C. § 1972. Doc. 123 at 6-13. Defendants pleaded all three arguments as affirmative defenses, Doc. 38 at pp. 16-18, 25-26, and all in fact are affirmative defenses. *See* Fed. R. Civ. P. 8(c)(1) (listing "failure of consideration" as an affirmative defense); *FDIC v. OneBeacon Midwest Ins. Co.*, 2012 WL 2814393, at *9 (N.D. Ill. July 10, 2012) (material breach); *Pingel v. Conn. Nat'l Bank*, 863 F. Supp. 80, 82-83 (D. Conn. 1994) (tying under 12 U.S.C. § 1972). (Defendants' answer raises other affirmative defenses, but those defenses are not pressed in their summary judgment brief and therefore are forfeited.) The lack of consideration and tying defenses fail on the merits for the reasons set forth in the court's opinion dismissing Defendants' counterclaims. Doc. 65 at 8 (rejecting Defendants' argument that the Amendments fail for lack of consideration), 8-10 (dismissing Defendants' § 1972 tying counterclaim). Moreover, because all three defenses arise from alleged misconduct predating the Amendments, all are barred by a provision in the Amendments that disavows any counterclaims or defenses arising from such alleged misconduct.

As noted in the Background section, Section 5 of Amendments provides that "[t]o induce Bank to enter into" the Amendments, each Defendant "represents, warrants, covenants and agrees that there exists no offsets, counterclaims or defenses to payment or performance of the obligations set forth in its Loan Documents and, in consideration hereof, expressly waives any and all such offsets, counterclaims and defenses arising out of any alleged acts, transactions or omissions on the part of Bank arising (or otherwise relating to the period) on or prior to the Amendment Effective Date." Doc. 114-8 at 2. Section 5 further provides that each Defendant "represents and warrants … that the Promissory Note (as amended by this Amendment) or Pledge Agreement and each other agreement (collectively, the 'Loan Documents') constitutes the legal, valid, and binding obligation of [each Defendant], enforceable against [each Defendant] in accordance with its terms." *Ibid*. Section 5 carves an exception—which the parties call the "carve-out clause"—providing that the loan instruments' "enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in law or equity)." *Ibid*. Defendants contend that their defenses reflect "general equitable principles" and therefore that they fall within this exception. Doc. 123 at 10-12.

Defendants' interpretation of the exception is untenable because it would effectively nullify the rest of Section 5. It is true that the term "general equitable principles," standing alone and considered out of context, is extremely broad and might possibly be interpreted to include Defendants' material breach, lack of consideration, and tying affirmative defenses. It is equally true, however, that Section 5 plainly was intended to exclude the vast majority of possible defenses that Defendants could assert in a suit to enforce the loan instruments. Settled law holds

that courts should not interpret contractual language in a way that renders superfluous other language in the same contract. *See Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012) (a contract "must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement"); *Howell v. Motorola, Inc.*, 633 F.3d 552, 560 (7th Cir. 2011) ("principles of contract interpretation require us to give effect to each clause"); *Rumpke of Ind., Inc. v. Cummins Engine Co.*, 107 F.3d 1235, 1243 (7th Cir. 1997) ("it is preferable to interpret language in contracts such that all language has meaning and effect").

The task here, then, is to determine *which* "general equitable principles" are included in the carve-out clause. The term "general equitable principles" follows an enumerated list of limitations on the enforceability of the loan instruments: "applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally." Because the term "general equitable principles" follows a list of other specific limitations on enforceability, it is appropriate to turn to the *ejusdem generis* canon. *See Pruett v. La Salceda, Inc.*, 359 N.E.2d 776, 778 (Ill. App. 1977). The canon provides that "[w]here general words follow specific words[,] … the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *United States v. Johnson*, 655 F.3d 594, 603 (7th Cir. 2011) (alteration in original); *see also Save Our Little Vermillion Env't, Inc. v. Ill. Cement Co.*, 725 N.E.2d 386, 390 (Ill. App. 2000).

Applying the canon here yields the conclusion that the term "general equitable principles" is limited to those principles that operate in the context of bankruptcy, insolvency, reorganization, moratorium, and similar laws. This construction does not render the term a dead letter; it is widely recognized, for instance, that "general equitable principles" apply in

bankruptcy cases. *See In re Vlasek*, 325 F.3d 955, 962 (7th Cir. 2003) ("general equitable principles" encompass "the power to require restitution of what has been taken by the enforcement of a judgment subsequently reversed"); *In re Kirwan*, 164 F.3d 1175, 1177-78 (8th Cir. 1999) ("General equitable principles govern the exercise of discretion. Courts may consider whether delay would prejudice the debtors or other creditors, the reason for the delay and its length and impact on efficient court administration, whether the creditors acted in good faith, whether clients should be penalized for counsel's mistake or neglect, and whether claimants have a meritorious claim."); *In re Georgian Villa, Inc.*, 55 F.3d 1561, 1563 (11th Cir. 1995) ("In the absence of any express statutory authority governing the disposition of surplus funds, bankruptcy courts have commonly recognized the debtor's right to recover surplus bankruptcy funds under general equitable principles."). Because Defendants' affirmative defenses do not arise from the bankruptcy, insolvency, reorganization, or moratorium contexts, the defenses are contractually waived under Section 5.

Defendants alternatively contend that the Amendments "apply only to the 2007 Loan Instruments and not the operative 2006 Promissory Notes." Doc. 123 at 11. That contention fails. As noted above, the 2006 Notes are not among the operative instruments, as they were replaced by the 2007 Notes.

## IV. Dunhill's Licensing in Illinois

Finally, Defendants contend that Dunhill's claims are barred because it is not licensed in Illinois to conduct financial services or any other business activity in the State. Doc. 123 at 14. Defendants forfeited the argument by failing to provide any reasoning or cite any supporting authority. *See Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

**Conclusion**

For the foregoing reasons, Dunhill is awarded summary judgment as to liability against Ashack, DeRobertis, Tinberg, and Walsh. By August 3, 2012, Dunhill shall file a memorandum setting forth what it believes to be the precise amounts owed by Defendants as of August 3, 2012, and (assuming no payments are made) also as of August 31, 2012. Defendants may file a responsive memorandum by August 17, 2012, and Dunhill may reply by August 24, 2012.

July 23, 2012

_____
United States District Judge